1
2
3
4
5
6
7
8
9
10
11
12

O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| SANDRA CORTEZ, | ) | Case No. CV 10-9613 JPR |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | AFFIRMING THE COMMISSIONER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed January 9, 2012.  The Court has taken the Joint Stipulation under submission without oral argument.  For the reasons stated below, the

Commissioner's decision is affirmed and this action is dismissed.

**II.   BACKGROUND**

Plaintiff was born on May 6, 1963.  (Administrative Record ("AR") 51.)  She has a high-school education.  (AR 29.)  Plaintiff claims to have been disabled since April 11, 2007, although she worked for four days in July 2007.  (AR 27-28.)

On July 6, 2007, Plaintiff filed an application for DIB.  (AR 98-100.)  On December 28, 2007, she filed an application for SSI.  (AR 101-03.)  After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 24, 2009.  (AR 22-50.)  Plaintiff appeared with counsel and testified on her own behalf.  (Id.)  On June 29, 2009, the ALJ denied Plaintiff's claims, determining that she has the severe impairments of "obesity, neck and back degeneration, sleep apnea, and asthma" (AR 17) but that she is not disabled because she has the residual functional capacity ("RFC")[1] to perform "less than a full range of light work" and "is capable of performing past relevant work as a cashier" (AR 18).  On November 2, 2010, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)  This action followed.

Plaintiff raises one disputed issue: Whether the ALJ properly rejected Plaintiff's hearing testimony as not credible.  (J. Stip. at 4.)

**III.  STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's or ALJ's

---

[1]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. § 404.1545(a); § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

2

findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole.  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a severe physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20

3

C.F.R. § 404.1520(a)(4); § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  § 404.1520(a)(4)(i); § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  § 404.1520(a)(4)(ii); § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform her past work; if so, the claimant is not disabled and the claim is denied.  § 404.1520(a)(4)(iv); § 416.920(a)(4)(iv).  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other

substantial gainful work available in the national economy.
§ 404.1520(a)(4)(v); § 416.920(a)(4)(v).  That determination comprises
the fifth and final step in the sequential analysis.
§ 404.1520; § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at
1257.

    B.    <u>The ALJ's Application Of The Five-Step Process</u>

    At step one, the ALJ found that Plaintiff had not engaged in any
substantial gainful activity since April 11, 2007.  (AR 17.)  At step
two, the ALJ concluded that Plaintiff "has the following severe
impairments: obesity, neck and back degeneration, sleep apnea, and
asthma."  (<u>Id.</u>)  The ALJ also noted that Plaintiff had "a history of
kidney stones, headaches, ovarian cysts, bilateral hearing loss,
ulcers, and GERD, hernia and colon polyps."  (<u>Id.</u>)  The ALJ concluded
that those impairments were "mild," controlled with medical treatment,
and "[did] not cause more than minimal limitation in the claimant's
ability to perform basic work activities and [are] therefore
nonsevere."  (AR 17-18.)  At step three, the ALJ found that Plaintiff
did not have an impairment or combination of impairments that met or
equaled any of the impairments in the Listing.  (AR 18.)  At step
four, the ALJ found that Plaintiff "has the residual functional
capacity to perform less than a full range of light work" and that
Plaintiff "can lift and carry twenty pounds occasionally and ten
pounds frequently, stand and walk six hours of an eight-hour workday
with appropriate breaks and sit six hours of an eight-hour workday,
with appropriate breaks."  (AR 18.)  The ALJ further found that
Plaintiff "has occasional postural limitations but no ladders, ropes
and scaffolds" and "must avoid concentrated exposure to dust, fumes,
gases, pulmonary irritants and no unprotected heights or dangers

machinery." (<u>Id.</u>)  At step five, the ALJ found that Plaintiff was "capable of performing past relevant work as a cashier" "as actually and generally performed." (AR 21.)

In finding that Plaintiff had the RFC to engage in a limited range of light work, the ALJ considered numerous pieces of evidence in the record.  The ALJ first noted that although Plaintiff "has a history of back pain," on October 24, 2008, Plaintiff's treating physician, Khalid B. Ahmed, M.D., evaluated an MRI of Plaintiff's spine and concluded that there was "no evidence of disc protrusion present at the L1-L2, L2-L3, and at the L3-L4 levels"[2] and "no evidence of spinal stenosis." (AR 19, 433.)  The ALJ further noted that orthopedic surgeon David Fisher, M.D., who treated Plaintiff in her worker's compensation case, "reported x-rays of the back were normal." (AR 19, 322, 325.)  Dr. Fisher also reported that Plaintiff "has a history of neck pain" but "had a full range of motion with some stiffness in her neck and throughout her body." (AR 19, 320-21.)  Plaintiff "continued to undergo exercises along with pain medication only when needed," and "[o]n June 29, 2007, [Plaintiff] was returned to work with no restrictions." (AR 19, 439.)  The ALJ also noted that Reda Gamel, M.D., a neurologist who examined Plaintiff on August 28, 2008, in connection with her worker's compensation claim, "reported [Plaintiff] had mild degeneration in the C5, C6 nerve root more on the right than the left side and mild acute ongoing degeneration in the same distribution." (AR 19, 455-56.)  Further, "[o]n October 24, 2008, Dr. Ahmed treated [Plaintiff] with cervical epidural facet

---

[2]   In fact, Dr. Ahmed's notes state that Plaintiff had "2 to 3 mm posterior disc protrusion," "disc dessication," and "hypertrophic facet changes" at the L3-L4, L4-L5, and L5-L6 disc levels.  As explained herein, however, the ALJ's error concerning L3-L4 was harmless.

injection for thereapeutic and analgesic purposes." (AR 19, 399-400.)

With respect to Plaintiff's hand pain, the ALJ noted that Plaintiff "has a history of hand pain" and that her treatment records show she "also complained of numbness especially in her left hand," but "[o]n examination, [Plaintiff] had no deformity in her hands" and "had 80 degrees of rotation in both hands." (AR 19, 318-23.) The neurologist, Dr. Gamel, "performed a nerve conduction and needle electromyography of the right and left upper extremities and found [Plaintiff] had moderate compromise of the right median neuropathy in the right hand that was consistent with carpal tunnel syndrome." (AR 19, 456.)

The ALJ also noted that Plaintiff "had complaints of shoulder pain," but that "[o]n examination, [she] had a good range of motion in her shoulders" and that her pain was controlled by medication. (AR 19, 318-23.) Plaintiff also "has a history of obesity"; the ALJ noted that Plaintiff "was 5'4" tall and weighed from 286 down to 272 pounds with a BMI of 49." (AR 19, 320, 376.) The ALJ found that Plaintiff's obesity was a "severe" impairment because Plaintiff's "daily activities, including her degenerative joint disease in the back, neck, [and] shoulder demonstrate that her obesity causes more than a minimal effect on her ability to [sic] basic work activities." (AR 19-20.) Finally, the ALJ noted that Plaintiff "has a history of breathing problems" (AR 20, 420), including asthma, but they are "treated with a breathing machine" and Plaintiff's lungs "appeared normal" upon examination. (AR 20, 39-40, 275, 420.)

Plaintiff testified during the hearing that she last worked in July 2007 for a temporary staffing agency, but she had to quit after four days because she was "hemorrhaging" on account of fibroid tumors

7

and ovarian cysts.[3]  (AR 27, 30.)  Plaintiff's last full-time
employment was "remodeling Wal-Mart" and it ended after one month, on
April 11, 2007, when Plaintiff was injured on the job.  (AR 28.)
Plaintiff has not worked or applied for work since July 2007.  (AR
29.)

Plaintiff testified that her menstrual cycle is now controlled
with medication.  (AR 31.)  She stated, however, that she still cannot
return to work because of "[p]ain in my stomach, my right side
constantly," "kidney stones," "lesions on my upper stomach," "ulcers,"
"musculoskeletal chronic pain on my right side," "a hernia," "colon
polyps," chronic arm pain, crookedness in the middle two fingers of
her right hand, "injury" to her neck, "spondylosis," "hearing loss in
both ears" for which she wears hearing aids, chronic migraine
headaches, and acid reflux disease.  (AR 31-33.)  Plaintiff testified
that her colon polyps were surgically removed (AR 32), and she takes
medication for her kidney stones to control the pain, but it doesn't
help (AR 33).  She stated that she was told that she would have to
have the surgery again in five years and that "if they see them again,
I have cancer," "[b]ecause cancer runs in my family."  (AR 32.)

She further testified that she cannot lift "anything five pounds
or more" because "my back hurts and my hernia pops out."  (AR 34.)
She stated that she cannot have surgery to fix the hernia until she

_____

[3]  Plaintiff apparently told Dr. Fisher that at some point after her
four days with the temp agency, and therefore after she claimed she had
become disabled, she also worked for a month as an "assembler with Volt
Information Sciences."  (AR 320.)  Because the ALJ did not rely on this
inconsistency to find Plaintiff less credible, this Court does not
either.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)
(error for district court to affirm ALJ's credibility decision "based on
evidence [ALJ] did not discuss" and "specific facts or reasons" ALJ did
not assert).

8

loses "another 40 pounds," but she is unable to lose weight.  (<u>Id.</u>)
She stated she has arthritis in her hands, has problems "gripping"
with her right hand, and her hands "cramp up a lot."  (AR 35.)  She
stated that a box hit her in the head on April 11, 2007, while she was
working at Wal-Mart, and as a result she suffers from neck and back
pain, chronic headaches, and hearing loss.[4]  (AR 36-37.)  Several
months after the accident, however, Dr. Fisher stated that "she states
her headaches are no longer present" and "the injury she suffered to
her head has resolved."  (AR 319.)  She testified that she takes "a
lot of pain killers" and uses heating pads for her back pain but "it's
not working"; she also has "creams," one of which "works sometimes" to
control her back pain.  (AR 37.)  When asked to isolate which part of
her back hurts, she responded, "My whole back.  Upper, lower, middle."
(AR 32.)  She stated that she drives herself to church "about once a
month" and drives herself to go grocery shopping and to the doctor.
(AR 42.)  She noted that the first hospital she was treated at,
Arrowhead, "told me nothing was wrong with me . . . so I got very
angry"; Plaintiff then switched to Loma Linda, and "they found
everything was wrong with me."  (AR 33.)

Plaintiff gave somewhat contradictory testimony on her need for
pain medication.  She first stated that she takes pain medication only

> when I'm really really severe in pain and I don't want to go
> to the emergency.  That's the only time I take it.

(AR 38.)  When asked specifically how often she took pain
medications, however, Plaintiff replied "constantly" and "daily"

---

[4]   Other information in the record shows that at one point she
claimed to have been hit in the head instead by a "truck headlight."
(AR 324.)

because she is "in pain all the time." (Id.)

Based on his analysis of the objective medical evidence outlined above, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 20.) The ALJ specifically rejected Plaintiff's hearing testimony, finding that her allegations "were not credible or consistent with the credible medical evidence" for the following five reasons:

First, the claimant's activities of daily living include caring for her personal needs, housekeeping, and yard work and attending church. The claimant continues to drive her own car.

Second, Dr. Ahmed reported the results from an MRI of the lumbar spine showed no evidence of disc protrusion present at the L1-L2, L2-L3, and at the L3-L4 levels. There was no evidence of spinal stenosis. [(AR 433-34.)]

Third, Dr. Fisher reported x-rays of the back were normal. Dr. Fisher said the claimant had no work restrictions. Dr. Fisher returned the claimant back to her usual and customary occupation without any restrictions. [(AR 318-23.)]

Fourth, on August 28, 2008, Dr. Gamel reported the claimant had mild degeneration in the C5, C6 nerve root more on the right than the left side and mild acute ongoing degeneration in the same distribution. [(AR 455-56.)] The

10

claimant was taking medication, which controlled her pain.
([AR 318-23.])

Fifth, the claimant's breathing problems [were] treated
with a breathing machine which helped control[] her breathing.
On examination, the claimant's lungs appeared normal. [¶]
State agency found the claimant could perform a light level of
exertion.  [(AR 39-40, 310-14.)]

(AR 20 (emphases in original).)

**V.   DISCUSSION**

The ALJ found that Plaintiff's subjective complaints regarding
her disabilities "are not totally credible" for five enumerated
reasons and that her "statements concerning the intensity, persistence
and limiting effects of these symptoms are not credible to the extent
they are inconsistent with [the ALJ's] residual functional capacity
assessment."  (AR 20.)   Reversal is not warranted based on the ALJ's
alleged failure to make proper credibility findings or properly
consider Plaintiff's subjective symptoms.

Although the medical evidence established that Plaintiff had
medically determinable physical impairments that were likely to cause
her some pain, the existence of some pain does not constitute a
disability if it does not prevent Plaintiff from working.  See Thorn
v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982) ("A showing that
[claimant] had a back ailment alone would not support a finding that
she was disabled unless the limitations imposed by the back ailment
prevented her from engaging in substantial, gainful activity.");
Hopper v. Astrue, No. CV 10-5387 RNB, 2011 U.S. Dist LEXIS 55969, at
*3 (C.D. Cal. May 24, 2011) ("[T]he existence of some pain does not
constitute a disability, if the claimant is not thereby prevented from

11

working.").

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 584 (9th Cir. 1988) (citations omitted). Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ did make specific, convincing findings in support of his adverse credibility determination. He noted that Plaintiff was able to care for her personal needs, do housekeeping chores and yard work, attend church, and drive her own car;[5] MRI results showed no evidence of disc protrusion in the L1-L2 and L2-L3 levels of the lumbar spine and no evidence of spinal stenosis; x-rays of Plaintiff's back were normal and Plaintiff was returned to work by her doctor with no restrictions; Plaintiff had mild degeneration in the C5 and C6 nerve root but her pain was controlled with medication; Plaintiff's breathing problems were treated with the CPAP machine; and examinations of Plaintiff's lungs showed they appeared normal. (AR

---

[5] Although Plaintiff testified she could no longer plant flowers because she couldn't grip the tools (AR 35), Dr. Fisher reported that Plaintiff said in September 2007 that "[h]er hobbies have not been affected" by her impairments. (AR 320.)

20.)  The ALJ also noted that Plaintiff's RFC assessment showed she could perform "a light level of exertion."  (<u>Id.</u>)

To the extent the ALJ erred in stating that Dr. Ahmed's notes also showed "no" protrusion at the L3-L4 disc levels (AR 20), the error was harmless.  Dr. Ahmed's notes state that there was a "2 to 3 mm posterior disc protrusion" at the L3-L4 levels; he also noted the presence of "disc dessication" and "hypertrophic facet changes."  (AR 434.)  As the ALJ correctly pointed out, however, Dr. Ahmed found "no evidence of spinal stenosis" at the L3-L4 level or at any level.  (<u>Id.</u>)  Moreover, the ALJ held that Plaintiff suffered the severe impairment of "neck and back degeneration" (AR 17), and he recognized that the record showed disc degeneration in the neck and spine, which was taken into account in his opinion (AR 19).  Thus, his misstatement of Dr. Ahmed's treating notes as to the L3-L4 disc levels was harmless error.  <u>See</u> <u>Robbins</u>, 466 F.3d at 885 (error harmless when clear from record that the error "was inconsequential to the ultimate nondisability determination") (citing <u>Stout v. Comm'r of Soc. Sec.</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); <u>see also</u> <u>Carmickle v. Comm'r of Soc. Sec.</u>, 533 F.3d 1155, 1163 (9th Cir. 2008) ("[T]he relevant inquiry is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error.").

Plaintiff argues that under <u>Bunnell</u>, 947 F.2d at 345, the ALJ erroneously rejected Plaintiff's subjective pain testimony on the ground that "it lacks support in the objective medical evidence."  (J. Stip. at 8.)  <u>Bunnell</u> held that "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of

13

objective medical evidence to fully corroborate the alleged severity
of pain."  947 F.2d at 345.  Plaintiff also argues that the ALJ erred
in considering Plaintiff's ability to engage in daily activities as
evidence of her lack of credibility.  (J. Stip. at 10 (citing <u>Vertigan
v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)).)

     The ALJ did not base his opinion "solely" on a lack of objective
medical evidence corroborating the severity of Plaintiff's pain,
however, nor solely on Plaintiff's ability to carry out daily
activities; those were simply two of the reasons the ALJ gave.  The
ALJ also noted that many of Plaintiff's MRI, x-rays, and other test
results were normal, the majority of Plaintiff's symptoms were
controlled with medication or other conservative treatment, and
several doctors had examined Plaintiff and found her capable of
working.  (AR 20.)  The ALJ's reasons in total constituted appropriate
bases for discounting Plaintiff's subjective symptom testimony.  <u>See,
e.g.</u>, <u>Williamson v. Comm'r of Soc. Sec.</u>, 438 F. App'x 609, 610 (9th
Cir. 2011) (proper for ALJ to discount plaintiff's testimony when
there was evidence plaintiff "exaggerated her symptoms"); <u>Tonapetyan
v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (credibility
determination based on, among other things, plaintiff's "tendency to
exaggerate" proper when supported by "substantial evidence");
<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may
infer that claimant's "response to conservative treatment undermines
[claimant's] reports regarding the disabling nature of his pain");
<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that
"contradictions between claimant's testimony and the relevant medical
evidence" provided clear and convincing reasons for ALJ to reject
plaintiff's subjective symptom testimony); <u>Flaten v. Sec'y of Health &</u>

14

1  Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ may properly
2  rely on minimal medical treatment).

3      Moreover, the ALJ did not err in considering Plaintiff's ability
4  to perform housekeeping and other daily activities as evidence of her
5  lack of credibility.  When a plaintiff claiming disability is able to
6  spend a substantial part of his or her day performing physical
7  functions that are transferable to a work setting, an ALJ may properly
8  discredit his or her allegations of complete inability to work.  See
9  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
10  1999).  Thus, the ALJ's determination that Plaintiff's activities of
11  daily living were consistent with an ability to perform a limited
12  range of light work was both reasonable and consistent with the
13  record.  This Court may not "second-guess" the ALJ's credibility
14  finding simply because the evidence may have been susceptible of other
15  interpretations more favorable to Plaintiff.  See Tommasetti, 533 F.3d
16  at 1039.  Plaintiff does not challenge any other aspect of the ALJ's
17  determination that she was not disabled other than his credibility
18  finding, which the Court finds was proper.  Thus, Plaintiff's
19  contentions do not warrant remand.
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

15

**VI.   CONCLUSION**

        Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.   IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED:   January 27, 2012                    _____
                                             JEAN P. ROSENBLUTH
                                             U.S. Magistrate Judge

---

        [6]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

16